UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Chapter 11 |
| | ) | |
| J & M Restaurant Enterprises, Inc., | ) | Case No. 15-07439 |
| | ) | |
| Debtor. | ) | Honorable Timothy A. Barnes |

## OBJECTION TO DEBTOR'S APPLICATION TO EMPLOY COUNSEL

Now comes Patrick S. Layng, the United States Trustee for Region 11 (the "U.S. Trustee"), by and through his attorney, Jeffrey S. Snell, and for his objection to Debtor's Application to Employ Counsel (the "Application to Employ") [Dkt. # 7], states to the Court as follows:

## BACKGROUND

1.      On March 3, 2015, J & M Restaurant Enterprises, Inc. (hereinafter "Debtor" or "JMRE"), through attorney Xiaoming Wu, filed a voluntary petition under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. § 101, *et seq*.

2.      JMRE owns and operates three (3) eateries:

   a.  Kingston's Jerk Chicken, 4253 167th St., Country Club Hills, IL 60478;

   b.  Kingston's Jerk Chicken, 2237 W. 95th St., Chicago, IL 60643; and

   c.  Uncle Joe's Jerk Chicken and Fish, 10210 S. Vincennes Ave., Chicago, IL 60643.

3.      The premises for each of the three locations are leased by JMRE.

4.      Jill Neish holds 51% of the equity in JMRE and serves as its president. Jill Neish's spouse, Merrick Nash, holds the remaining 49% of the equity in JMRE.

5.      Jill Neish is a Chapter 13 debtor in Case No. 12-38381.

6.    Ms. Neish is represented in her Chapter 13 case by attorneys affiliated with Mr. Wu.[1]

**A. Schedules and Statements**

7.    On March 3, 2015, JMRE filed its Petition, Schedules, List of Equity Holders, and Statement of Financial Affairs. These documents contained numerous inaccuracies. These inaccuracies were only corrected after the U.S. Trustee questioned certain of the initial representations during a telephone call with Mr. Wu and on the record at the March 31, 2015, meeting of creditors.

8.    The original Petition indicated that JMRE used no other names and was not a small business debtor as defined under § 101(51D). (*See* Petition, Dkt. # 1.) On March 15, 2015, the Petition was amended to add the trade names Kingston's Jerk Chicken and Uncle Joe's Jerk Chicken & Fish. (*See* Amended Petition, Dkt. # 5.) On April 3, 2015, the Petition was amended again to reflect the fact that JMRE is a small business debtor as defined under § 101(51D). (*See* Second Amended Petition, Dkt. # 11.)

9.    The original Schedule E reflected certain priority tax debts but indicated that there were no priority claims for wages, salaries or commissions. (*See* Schedule E, Dkt # 1.) On April 3, 2015, Schedule E was amended to add fourteen (14) individuals with claims described as

---

[1] When the Chapter 13 case was filed, Ms. Neish was represented by attorneys from the Law Offices of Ernesto Borges. Subsequent to the Chapter 13 filing, the attorneys of that firm combined with other attorneys to form Ledford, Wu & Borges, LLC. Mr. Wu is a partner in Ledford, Wu & Borges, LLC.

"Notice Only" in the amount of $0.00.[2] (*See* Amended Schedule E, Dkt # 12.)

10.     The original Schedule G represented that JMRE is a party to only one lease. (*See* Schedule G, Dkt # 1.) On March 31, 2015, Schedule G was amended to add leases for JMRE's other two locations.[3] (*See* Amended Schedule G, Dkt. # 8.)

11.     The original Schedule H indicated there are no codebtors for any of JMRE's liabilities. (*See* Schedule H, Dkt. # 1.) On April 3, 2015, Schedule H was amended to disclose that Ms. Neish is a codebtor on all three of JMRE's real property leases. (*See* Amended Schedule H, Dkt. # 14.)

---

[2] Based upon Ms. Neish's testimony at the March 31, 2015, meeting of creditors, the U.S. Trustee believes that many of the individuals listed on the Amended Schedule E held liquidated claims in determinable amounts on the petition date. Their claims were for the pay owed them for the prior two-week period. On April 6, 2015, Mr. Wu advised the U.S. Trustee that:

> The amended Schedule E was intended to give notice to the added parties rather than provide for their substantive treatment. In addition to the bookkeeping, Ms. Neish also runs three restaurants, manages several properties and works full time. She was unable to determine before the 4/3 deadline the specific amount owed to each individual employee on the date of filing. Just like cases in other chapters, the amount on the schedule is never necessarily determinative. We thought that, as long as notice of was given to the added parties, the primary purpose of the amendments was achieved.

Mr. Wu's rationale recited above is consistent with statements he made at the meeting of creditors, where he expressed a desire not to amend Schedule F to reflect a landlord's claim for back rent, as the amendment would cost money and the landlord had notice of the case. Mr. Wu did ultimately file an amended Schedule F to reflect the $26,306.66 disputed claim. (*See* Dkt. # 12.)

[3] At the meeting of creditors on March 31, 2015, Ms. Neish testified that she did not believe that Rossi Real Estate Corp. and Graham Realty & Consulting, the landlords omitted from the original Schedule G, were aware of the bankruptcy case at the time of that meeting. The meeting of creditors was thereafter continued to April 23, 2015, and Mr. Wu sent the landlords (and other originally omitted parties) notice of the continued meeting. (*See* Dkt. # 18.) There is cause to believe that the Amended Schedule G is not complete. At the meeting of creditors, Ms. Neish testified that JMRE leases cash registers for each of its locations. Additionally, one presumes that JMRE has a contractual relationship of some sort with ADP for the payroll and related services that it performs.

12.     The original List of Equity Security Holders indicated that there are no equity holders. (*See* List of Equity Security Holders, Dkt # 1.) On April 3, 2015, the List of Equity Holders was amended to reflect the entity's equity holders. (*See* Amended List of Equity Security Holders, Dkt. # 16.)

13.     The Statement of Financial Affairs was amended April 3, 2015, to change the responses to Questions 4.b., 18.b., 19.a., 19.c., and 21.b. (*See* Amended Statement of Financial Affairs, Dkt # 15.)

**B. Post-Petition Payment of Pre-Petition Claims**

14.     JMRE has eight (8) full-time employees and four (4) part-time employees. The employees are paid bi-weekly, and payroll is processed by ADP.

15.     On or around March 6, 2015, JMRE paid employees at its Chicago locations for work performed between February 15 and February 28, 2015. On or around March 13, 2015, JMRE paid employees at its Country Club Hills location for work performed between February 22 and March 7, 2015.

16.     JMRE has not requested, and has not obtained, permission to pay pre-petition wages.

17.     Ms. Neish's testimony at the March 31, 2015, meeting of creditors indicates that she was not told by Mr. Wu (and that she was not otherwise aware) that a debtor-in-possession is prohibited from paying pre-petition obligations without court authorization.

18.     In addition to employees' wages, there is cause to believe that other pre-petition obligations may have been paid post-petition. Many of JMRE's vendors are paid cash on delivery, but some of its utility providers have post-pay arrangements with automatic debit from JMRE's accounts.

**C. The Employment Application and Related Disclosures**

19.     Mr. Wu filed his Rule 2016(b) Disclosure with the Petition on March 3, 2015.

(*See* Rule 2016(b) Disclosure, Dkt. # 1.) The Rule 2016(b) Disclosure states that Mr. Wu

received $5,000 *from the Debtor* for legal services. Similarly, both iterations of the Statement of

Financial Affairs indicate in response to Question 9 that Mr. Wu's law firm received $5,000 *from

the Debtor*. (*See* Dkt ## 1 and 15.) At the meeting of creditors, Ms. Neish testified that she paid

the retainer to Mr. Wu's law firm with funds from her personal retirement account on October

23, 2014.

20.     On March 24, 2015, Mr. Wu filed the Application to Employ. Attached to the

Application to Employ is the Attorney Retention Contract (the "Retention Contract") and the

Declaration in Support of Debtor's Application to Employ Counsel (the "Rule 2014

Declaration"). (*See* Application to Employ, Dkt # 7.)

21.     The Retention Contract is dated February 9, 2015, and it is between Mr. Wu's law

firm *and Ms. Neish*. JMRE is not mentioned anywhere in the Retention Contract. The document

defines "Client" as "the undersigned, both individually and jointly," and the "Client" signature

on the document appears to be the signature of Ms. Neish.

22.     In the Rule 2014 Declaration, Mr. Wu stated, in pertinent part:

2. I am familiar with the matters set forth herein.

3. None of the members of Ledford, Wu and Borges, LLC holds or represents an
interest adverse to the bankruptcy estate.

4. None of the members of Ledford, Wu and Borges, LLC has any connection
with the debtors [sic], creditors, any other party in interest, their respective
attorneys and accountants, the United States Trustee, or any person employed in
the office of the United States Trustee.

>5. All members of my firm including myself are "disinterested persons" as defined in 11 U.S.C. § 101(14).

(Rule 2014 Declaration, Dkt # 7.)

23.     Prior to the initial presentment of the Application to Employ on March 31, 2015, the U.S. Trustee learned from a public records search that Mr. Wu's firm represents Ms. Neish in her pending Chapter 13 case.

24.     On April 6, 2015, Mr. Wu filed his Amended Declaration in Support of Debtor's Application to Employ Counsel (the "Amended Rule 2014 Declaration"), stating, in pertinent part:

>2. I am familiar with the matters set forth herein.
>
>3. None of the members of Ledford, Wu and Borges, LLC holds or represents an interest materially adverse to the bankruptcy estate.
>
>4. In addition to the instant case, the firm also represents Jill Neish, the president and co-owner of the debtor-in-possession, in a Chapter 13 case, Case No. 12-38381.
>
>5. The firm has no prepetition claim against the debtor in either case.
>
>6. The undersigned believes that he will be able to provide competent and diligent representation to each client.
>
>7. The presentation [sic] is not prohibited by law.
>
>8. The representation does not involve the assertion of a claim by one client against another client represented by the undersigned in the same litigation or other proceeding before a tribunal.
>
>9. Jill Neish has given an informed consent.
>
>10. All members of my firm including myself are "disinterested persons" as defined in 11 U.S.C. § 101(14).

(Amended Rule 2014 Declaration, Dkt. # 20.)

25.     On April 6, 2015, Mr. Wu filed a Statement in Support of Application for

Employment of Counsel signed by Jill Neish, in her capacity as president of JMRE (the "Waiver

Statement"). In the Waiver Statement, Ms. Neish informs:

> 1. I am the president of J & M Restaurant Enterprises, Inc., which is the debtor in possession in the instant case.
>
> 2. I am also the debtor in the Chapter 13 case In re Jill Neish, Case No. 12-38381, where the law firm Ledford, Wu & Borges, LLC, f/k/a Law Offices of Ernesto D. Borges, is my legal counsel.
>
> 3. My attorney in the instant case explained to me a potential conflict of interest might exist in representing me in both cases.
>
> 4. Having been fully informed, I hereby consent to the legal representation of this case by Xiaoming Wu and the [sic] Ledford, Wu & Borges, LLC.

(Waiver Statement, Dkt # 21.) The Waiver Statement is not dated, and provides no indication as

to what potential conflicts Ms. Neish is attempting to waive *on behalf of the JMRE estate*.

## OBJECTION

### I. Mr. Wu is not eligible to be employed by the estate under § 327(a)

26.     To serve as general bankruptcy counsel for a debtor-in-possession, an attorney

must qualify under 11 U.S.C. § 327(a), *to wit*: the attorney (1) cannot "hold or represent an

interest adverse to the estate" and (2) must be a "disinterested person," a term defined in §

101(14). "Together, the statutory requirements of disinterestedness and no interest adverse to the

estate 'serve the important policy of ensuring that all professionals appointed pursuant to section

327(a) tender undivided loyalty and provide untainted advice and assistance in furtherance of

their fiduciary responsibilities.'" *In re Crivello*, 134 F.3d 831, 836 (7th Cir. 1998) (quoting *Rome

v. Braunstein,* 19 F.3d 54, 58 (1st Cir.1994)). If one attorney who is a member of a law firm is

not eligible to be employed by a debtor-in-possession because he or she fails to meet either

requirement of § 327(a), "then all the members of the attorney's law firm are also disqualified."

*In re Tinley Plaza Assoc., L.P.*, 142 B.R. 272, 277 (Bankr. N.D. Ill. 1992) (citing *In re Philadelphia Athletic Club, Inc.*, 20 Bankr. 328, 338 n. 11 (E.D. Pa. 1982); *In re Paolino*, 80 Bankr. 341, 345 (Bankr. E.D. Pa. 1987); Rule of Professional Conduct for the Northern District of Illinois, Rule 1.10(a)).

27.      To assist in evaluating whether a professional is eligible to be employed by the estate under § 327(a), Rule 2014(a) of the Federal Rules of Bankruptcy Procedure requires the applicant to state in both the application and accompanying verified statement, the applicant's "connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee." Fed. R. Bankr. Proc. 2014(a). A "professional 'cannot pick and choose which connections are irrelevant or trivial.'" *United States v. Gellene*, 182 F.3d 578, 588 (7th Cir. 1999) (quoting *In re EWC, Inc.,* 138 B.R. 276, 280 (Bankr.W.D.Okl.1992)). "Failure to meet the requirements of Rule 2014(a) is enough by itself to disqualify an attorney and deny compensation even if no conflict of interest exists." *In re Tinley Plaza Assoc., L.P.*, 142 B.R. 272, 278 (Bankr. N.D. Ill. 1992) (citing *In re EWC, Inc.*, 138 B.R. 276, 280 (Bankr. W.D. Okla. 1992) and *In re Rusty Jones, Inc.*, 134 B.R. 321, 341 (Bankr. N.D. Ill. 1991)).

28.      The Rule 2014 Declaration filed in the instant case was materially inaccurate. It failed to disclose that attorneys from Mr. Wu's law firm currently represent Ms. Neish in her pending Chapter 13 case and affirmatively stated that no member of Mr. Wu's firm:  (a) "holds or represents an interest adverse to the bankruptcy estate," and (b) "has any connection with the debtors [sic], creditors, any other party in interest..." (Rule 2014 Declaration, ¶¶ 3-4.)

29.      Only after Mr. Wu was asked about his firm's representation of Ms. Neish did he disclose the fact on the record and in his Amended Rule 2014 Declaration. Mr. Wu has taken no

steps to correct the inaccurate representations concerning the source of the retainer. The

inadequate disclosures, standing alone, warrant Mr. Wu's disqualification from serving as

counsel to the estate. *See In re Tinley Plaza Assoc., L.P,* 142 B.R. at 278.

30.     There is a conflict between Ms. Neish's personal interests and the interests of the

JMRE bankruptcy estate. A review of documents filed in Ms. Neish's Chapter 13 case indicates

that Ms. Neish relies on income from JMRE to make her monthly plan payments in that case.[4]

The treatment of Ms. Neish's interests in this case, therefore, will have a very real and direct

impact on the success or failure of her personal Chapter 13 bankruptcy case. The conflict is

unavoidable. The notion that the debtor-in-possession can waive the conflict consistent with its

fiduciary obligations is without merit. *See In re Envirodyne Indus.*, 150 B.R. 1008, 1016 (Bankr.

N.D. Ill. 1993) (noting that § 327(a)'s requirements cannot be excused by waiver).

31.     The interests of Ms. Neish are (and were on the petition date) adverse to the

estate. Therefore, neither Mr. Wu nor any other member of his law firm are eligible for

employment under § 327(a).

## II. It is questionable whether Mr. Wu can presently provide services that would benefit the estate

32.     While a debtor-in-possession should not ordinarily be deprived of the privilege of

retaining counsel of its choosing, the privilege is not without limitation. Some limitation is

necessary because more than just the interests of the party selecting the attorney are at stake; an

attorney representing a debtor-in-possession is a fiduciary for the estate. *In re Doors & More*,

*Inc.*, 126 B.R. 43, 45 (Bankr. E.D. Mich. 1991).

---

[4] *See*, *e.g.*, Motion to Modify Plan to Defer Plan Payment Default, Case No. 12-38381, Dkt # 56; Amended Schedule I, Case No. 12-38381, Dkt # 12; Chapter 13 Statement of Current Monthly Income, Case No. 12-38381, Dkt # 4.

33.    A professional should only be employed under § 327 when the employment will aid in the administration of the case and be of benefit to the estate. *In re Vettori*, 217 B.R. 242, 245 (Bankr. N.D. Ill. 1998). "[A]n attorney hoping to represent a Chapter 11 debtor must have more than just integrity; that counsel must also have a strong knowledge of technical requirements under the Bankruptcy Code." *Id*.

34.    JMRE proposes to retain Mr. Wu as counsel for the purpose of reorganizing its affairs under Chapter 11. The services Mr. Wu has rendered to date, however, indicate that he is not up to the task. Mr. Wu has filed numerous documents that he knew, or should have known, were inaccurate at the time he filed them. Mr. Wu apparently failed to recognize the issues raised by JMRE's post-petition payment of pre-petition claims and has failed to take any corrective action. Mr. Wu's legal representation to date indicates that he lacks a strong knowledge of the requirements of Chapter 11 of the Bankruptcy Code.

WHEREFORE, the U.S. Trustee requests that the Court deny the Application to Employ and order the $5,000 retainer returned to Ms. Neish pursuant to § 329(b).

RESPECTFULLY SUBMITTED,

PATRICK S. LAYNG
UNITED STATES TRUSTEE

Dated: <u>April 13, 2015</u>                    <u>/s/ Jeffrey S. Snell</u>
Jeffrey S. Snell, Trial Attorney
United States Department of Justice
Office of the United States Trustee
219 South Dearborn Street, Room 873
Chicago, Illinois 60604
(312) 886-0890

## <u>CERTIFICATE OF SERVICE</u>

I, Jeffrey S. Snell, an attorney, state that pursuant to Local Rule 9013-1(D) the above **OBJECTION TO DEBTOR'S APPLICATION TO EMPLOY COUNSEL** was filed on April 13, 2015, and served on all persons identified as Registrants on the service list below through the Court's Electronic Notice for Registrants and, as to all other parties on the service list below, I caused a copy to be sent First Class Mail, as indicated, before 5:00 p.m. on April 13, 2015.

<u>/s/ Jeffrey S. Snell</u>

## <u>SERVICE LIST</u>

**Registrants Served Through the Court's Electronic Notice:**

- Xiaoming Wu    notice@billbusters.com; billbusters@iamthewolf.com

**Parties Served via First Class Mail:**

Attn: Jill Neish
J & M Restaurant Enterprises, Inc.
4253 167th Street
Country Club Hills, IL 60478